UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
13 STATE STREET LLC,

        *Plaintiff*,

v.                                                                        No. 1:20-cv-77

ACADIA INSURANCE COMPANY,

        *Defendant*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| RUPP BAASE PFALZGRAF<br>   CUNNINGHAM LLC<br>*Attorneys for Plaintiff*<br>1600 Liberty Building<br>Buffalo, New York 14202 | JAMES J. GRABER, ESQ.<br>MARCO CERCONE, ESQ. |
| GOLDBERG SEGALLA LLP<br>*Attorneys for Defendant*<br>665 Main Street<br>Buffalo, New York 14203 | SHARON ANGELINO, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

This is an insurance dispute between plaintiff 13 State Street LLC ("State Street" or "plaintiff") and defendant Acadia Insurance Company ("Acadia" or "defendant") over coverage for loss related to water damage at a property located at 13 State Street, Schenectady, New York (the "Property").

On January 1, 2020, State Street filed a one-count complaint bringing a claim for breach of contract stemming from the parties' disagreement over coverage. Dkt. 1. Acadia answered on February 19, 2020, asserting numerous affirmative defenses. Dkt. 5.

On January 18, 2022, State Street moved for summary judgment. Dkt. 33. Rather than cross-move, Acadia filed its own motion for summary judgment on January 21, 2022. Dkt. 34. These motions have been fully briefed and the Court will consider them on the basis of the submissions without oral argument.

## II. **BACKGROUND**[1]

Acadia issued insurance policies to State Street with effective dates of May 17, 2016 through November 17, 2017, and November 17, 2017 through November 17, 2018 (together the "Policy"). Dkt. 33-13, Plaintiff's Statement of Material Facts ("PSMF"), ¶ 1. The Policy covered the Property that

---

[1] The following facts are drawn from the parties' statements of undisputed material facts and responses pursuant to Local Rule 7.1(a)(3), to the extent those facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein.

plaintiff and its related entities were renovating, which is a former YMCA building dating back to the 1920's. *Id.* ¶¶ 2-3. The Policy afforded certain Rehabilitation and Renovation coverage to State Street for the Property, subject to certain limitations, conditions, and exclusions. Dkt. 34-17, Defendant's Statement of Material Facts ("DSMF"), ¶ 4.[2] Relevant here, "[i]n case of a loss," the Policy required State Street to "give 'us' or 'our' agent prompt notice including a description of the property involved." Dkt. No. 34-2 at 63.

Given the Property's age and history, State Street was required to, and did, submit a Historic Preservation Certification Application (the "Application") to New York State. PSMF ¶ 4. Plaintiff retained a third party, Patricia Altman ("Altman") of PACA Architectural History & Preservation Consulting, to assist in completing the Application. *Id.* ¶ 5. Altman did so on August 7, 2015. *Id.* In the Application, Altman indicated that plumbing leaks had caused extensive damage to certain areas of the Property, that water remained on floors, and that mold remained on doors. DSMF ¶ 7. Moreover, the Application described the gymnasium floors as

---

[2] Plaintiff claims that the evidence defendant relies on is, for the most part, improperly authenticated or not in admissible form. Contrary to plaintiff's characterization that defendant relies on its affirmation as evidence, defendant clearly relies on exhibits that its affirmation simply introduces. This is a permissible approach to presenting evidence and documents into the record. *See, e.g., Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, 2011 U.S. Dist. LEXIS 147953, *10 (W.D.N.Y. Dec. 23, 2011).

3

"severely damaged" and noted that recent water infiltration had "severely damaged" acoustical ceiling tile, plaster ceilings, walls, and hardwood floors throughout the gymnasium. *Id*. However, in the Application, Altman observed the floor to be repairable. PSMF ¶ 6.

State Street began renovations consistent with the Application around June 2016. PSMF ¶ 7. In late October or early November 2016, a roofing subcontractor stepped through the Property's roof, penetrating the plywood and causing a hole to form. *Id*. ¶ 8. Plaintiff claims that in ordinary circumstances, the plywood immediately would have been replaced, but the presence of asbestos in the Property's roof prevented immediate replacement. *Id*. ¶ 9. According to plaintiff, asbestos remediation requires inspection and approval from New York state, and plaintiff claims it placed a tarp over the hole in the Property's roof until it received such approval. *Id*. ¶ 10. Defendant agrees that someone placed a tarp over the hole at some point, but avers that there is not sufficient documentary evidence demonstrating that it remained secured until plaintiff received state approval. Dkt. 42, Defendant's Response to PSMF ("DRSMF"), ¶ 10.

State Street claims it reported the roof incident to its insurance agent, Lawley Real Estate Insurance Services ("Lawley"), but did not make a formal claim at that time because, among other things, it believed the anticipated damage was below its policy deductible. PSMF ¶ 11. Acadia, for its part,

4

claims to have no knowledge that plaintiff reported the incident to Lawley. DRSMF ¶ 11. In January 2017, once the state approved plaintiff's repair and asbestos remediation, plaintiff began work on the Property's roof. *Id*. ¶ 12. According to plaintiff, it finished these repairs by April 2017. *Id*.

Once State Street finished the repairs, it then submitted an Amended Historic Preservation Certification Application (the "Amended Application") on April 10, 2017. PSMF ¶ 13. In the Amended Application, Altman "observed the main gym floor to be beyond feasible repair." *Id*. ¶ 14. Altman further noted that the "condition of the floor worsened since [the] initial application," specifically "with cupping, buckling, and cracking throughout" and concluded that the "floor need[s] to be replaced in full." *Id*. Altman attributed these conditions to water damaged that "had either continued since or occurred after [she] submitted [the] initial application." *Id*. ¶ 15.

State Street claims that the worker stepping through the Property's roof was the only water intrusion it suffered between August 7, 2015, the date of the Application, and April 10, 2017, the date of the Amended Application. PSMF ¶ 16. However, Acadia notes that a June 1, 2016 site survey performed by Alexander & Schmidt indicates that water intrusion occurred as a result of a roof drain breaking about a year prior, meaning it is possible that water intrusion occurred between the Application and the Amended Application. DRSMF ¶ 16.

On February 13, 2018, State Street filed a formal insurance claim (the "Claim") to Acadia for damages to the Property. PSMF ¶ 17. Two days later, defendant issued a reservation of rights (the "Reservation of Rights") that noted "the delay in reporting this claim may impede [Acadia's] ability to properly investigate and evaluate [State Street's] claim" and cited the Policy's provision on prompt notice. Dkt. 34-4. Acadia spent 1.5 years investigating the Claim, and formally denied it (the "Denial") on August 2, 2019. PSMF ¶ 18; DSMF ¶ 12. Defendant based the Denial on several considerations, namely, plaintiff's failure to provide prompt notice of the roof damage, plaintiff's lack of supporting evidence and documentation, and plaintiff's failure to protect the Property. PSMF ¶ 22; DSMF ¶ 12.

### III. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV. DISCUSSION

State Street claims it has met its burden of demonstrating a fortuitous loss with respect to the Property, and Acadia offers several reasons for why it denied coverage. The Court agrees with defendant's first justification and need not go further.

The principal thrust of Acadia's motion for summary judgment is that State Street failed to provide it with timely notice of the alleged loss, and thus failed to satisfy a condition precedent to coverage. As defendant explains, although plaintiff knew of the alleged roof damage "as early as December 1, 2016," it did not provide defendant with notice of the loss until February 13, 2018. Dkt. No. 34-16 at 11–13; *see also* Dkt. No. 34-3.

In New York, timely notice is a condition precedent to insurance coverage, and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice. *Minasian v. IDS Prop. Cas. Ins. Co.*, 676

7

F. App'x 29, 31 (2d Cir. 2017) (citing *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381 (2008)).  A notice obligation is triggered when "the circumstances known to the insured ... would have suggested to a reasonable person the possibility of a claim." *Id.* (citing *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995)).  "[T]he insurer need not demonstrate prejudice before it can assert the defense of noncompliance by the insured." *Sparacino*, 50 F.3d at 143.

Upon review, State Street cannot reasonably dispute that it provided late notice to Acadia.  "In case of a loss," the Policy required the insured to "give 'us' or 'our' agent prompt notice including a description of the property involved." Dkt. No. 34-2 at 63.  As relevant here, plaintiff admits that "[i]n late October or early November 2016, a roofing subcontractor stepped through the roof, penetrating the plywood, and causing a hole to form." Dkt. No. 35-1 ¶ 8.  Although plaintiff claims to have "report[ed] the roof penetration to Lawley, an agent of plaintiff," it further admits that it did not file "a formal notice of claim" until February 13, 2018 – approximately fourteen months later.  *Id.* ¶ 14.

Where an insurance policy requires notice be given as soon as practicable, "such notice must be accorded the carrier within a reasonable period of time." *Minasian*, 676 F. App'x at 31 (citing *Great Canal Realty Corp. v. Seneca Ins. Co.*, 800 N.Y.S.2d 521, 522 (2005)).  "On numerous occasions, New York

8

courts have held notice delays of less than three months unreasonable as a matter of law and discharged insurers of coverage obligations." *Id.* (collecting cases). Accordingly, the fourteen-month delay in this case was unreasonable as a matter of law.

In response, State Street offers three reasons why Acadia's late notice argument either fails or is inapplicable. None of these arguments is persuasive, and the Court addresses each in turn.

*First*, State Street argues that Acadia waived late notice as a grounds for denying coverage because it failed to include such grounds in its denial letter. Dkt. No. 35 at 5-8. Defendant responds that on February 15, 2018 – just two days after it received notice of the alleged loss – it issued the Reservation of Rights, which specifically noted it was reserving rights based on late notice and quoted the Policy's language requiring prompt notice. Dkt. 43 at 6. Defendant further explains that its August 2, 2019 disclaimer letter incorporated its Reservation of Rights and reiterated the prompt notice policy language. *Id.* In defendant's view, the mere fact that it later denied coverage on "other grounds in addition to late notice does not render the late notice claim waived." *Id.*

New York insurance law defines waiver as a voluntary and intentional relinquishment of a known right. *Albert J. Schiff Associates. Inc. v. Flack*, 435 N.Y.S.2d 972, 974-75 (N.Y. 1980); *State of New York v. AMRO Realty*

9

*Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991). Waiver may be found "where there is direct or circumstantial proof that the insurer intended to abandon the defense." *AMRO Realty Corp.*, 936 F.2d at 1431. An implied waiver exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances. *Id.*

The record indicates that, on February 13, 2018, State Street filed the Claim to Acadia for damages to the Property. PSMF ¶ 17. Two days later, Acadia issued the Reservation of Rights stating that defendant reserved its rights under the Policy because "[the] loss is reported to have occurred on or about December 1, 2016, however it was not reported … until February 13, 2018," and explained that "the delay in reporting this claim may impede [Acadia's] ability to properly investigate and evaluate [State Street's] claim." Dkt. 34-4. The Reservation of Rights also included the language from the Policy requiring prompt notice. *Id.*

On August 2, 2019, Acadia issued the Denial. PSMF ¶ 18; DSMF ¶ 12. The Denial specifically notes that "prior communications from Acadia are specifically incorporated herein." Dkt. 34-10. Then, the Denial advises State Street that defendant is denying coverage for the alleged loss, and enumerates its reasons for doing so. *Id.* Within this discussion, the Denial reiterates the prompt notice provision from the Policy that it first cited in the Reservation of Rights. *Id.* Finally, the Denial states that Acadia does not

10

waive its right to deny coverage at a later date for other reasons, and that Acadia made its coverage determination based on the information currently available.

In sum, the evidence establishes that Acadia not only immediately reserved its rights with respect to a late notice defense and cited the applicable Policy provision, it also incorporated this reservation into the Denial. In the Denial, defendant also cited the applicable Policy provision again, and specifically stated that it did not waive its right to deny coverage at a later date for other reasons. Even viewing the facts in the light most favorable to State Street, no reasonable jury could conclude that defendant voluntarily and intentionally relinquished its late notice argument. *See Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 269 (E.D.N.Y. 2014) ("[W]here the insurer has repeatedly reserved its rights, 'such reservations preclude arguments both as to waiver and to equitable estoppel'") (citing *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006)).

*Second*, State Street argues that even if Acadia did not waive its late notice defense, plaintiff provided proper notice to Lawley, an insurance agent. In plaintiff's view, this was sufficient to put Acadia on notice of a claim under the Policy. This argument also fails.

11

Although State Street claims to have promptly notified Lawley when the worker first put a hole in the Property's roof, it concedes that it did not make a formal notice of claim to Acadia until nearly fourteen months later. Even viewed in the light most favorable to State Street, the record establishes that plaintiff and Lawley generally discussed the damage and together decided not to report it to defendant.[3] Indeed, plaintiff's own representative testified in his deposition that plaintiff and Lawley:

> [D]idn't really talk about a claim at that point because we knew the costs for the repair of the actual damage to the roof would be covered under the construction contingency. So we didn't have to worry about the actual repairs to the roof … And then the subsequent damage wasn't felt to be sufficient to create a claim, if we already have a deductible.

Dkt. 34-11 at 84:12-20. Plaintiff's representative further noted that he first discussed a possible claim with Lawley "at the occurrence, in 2016." *Id*. at 85:10-11.[4]

---

[3] This scenario differs from the first of two cases plaintiff cites supporting its agency argument. In *D.C.G. Trucking Corp. v. Zurich Ins. Co.*, the insured provided substantial information – not merely general discussion – to the insurance agent under the reasonable belief that the agent would communicate notice to the insurer. *See* 81 A.D.2d 990, 991 (Sup. Ct. App. Div. 3d Dep't 1981) (holding that insured providing insurance agent with two legal summonses and accident report that stated the name of the insured, the date, time and place of the accident, and name of the injured party constituted notice to defendant insurance carrier). Notably, plaintiff's second cited case, *Martinson v. Massachusetts Bay Ins. Co.*, undermines the notion that notice to Lawley was sufficient to impute notice to defendant. 947 F. Supp. 124, 129 (S.D.N.Y. 1996). There, the court rejected insureds' agency argument because, as here, the insureds did not expect the agent to notify the carrier. *See id*. ("Although a principal is generally bound by notice given to his agent, this is not true when the person giving notice had no expectation that it would be transmitted to the principal …").

[4] Other than the representative for plaintiff's testimony, there does not appear to be any documentary evidence indicating that plaintiff discussed the roof damage or a potential claim with Lawley at the time of the incident.

In other words, plaintiff was aware of the possibility of a claim under the Policy when the damage first occurred but decided not to tender one because it estimated that the deductible exceeded the loss amount. That is not a valid excuse under New York law. As the First Department has explained:

> No exception is made [to the timely notice requirement] for losses which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim. The import is clear; all losses are to be reported as soon as practicable if they are to become the basis of a claim. When the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage it does so at its own risk.

*Power Auth. v. Westinghouse Elec. Corp.*, 502 N.Y.S.2d 420, 422 (N.Y. App. Div. 1st Dep't 1986); *see also Heydt Contracting Corp. v. Am. Home Assur. Co.*, 146 A.D.2d 497, 499 (N.Y. 1989) ("The fact that a particular occurrence may not in the end result in a ripened claim does not relieve the insured from advising the carrier of that event, and plaintiff's policy with defendant dictates that timely written notice be provided whenever a claim 'may' arise").

*Third*, State Street claims that it had a reasonable excuse for the delay in providing notice to Acadia due to its "reasonable belief" in non-coverage.[5] Specifically, plaintiff claims that neither it nor Lawley believed that a minor hole in the roof would cost more than the deductible, so it never pursued a

---

[5] In its papers, plaintiff phrases this argument as a "reasonable belief in non-liability." *See* Dkt. 35 at 7. However, given previous statements and the argument plaintiff advances, plaintiff clearly is attempting to assert that it had a reasonable belief in *non-coverage*, not non-liability.

13

claim because it believed there was no coverage. As an initial matter, this argument fails for the same reasons as immediately above. Plaintiff's representative indicated that plaintiff knew there was a possibility of the Policy's applicability, but made the tactical decision to not formally submit a claim to defendant because it believed the deductible amount would be in excess of the damage. As New York law makes clear, there is no exception to the timely notice requirement in such a situation. *See Power Auth.*, 502 N.Y.S.2d at 422 (stating that there is no exception to timely notice requirement "for losses which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim"); *see also Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 239-40 (2002) ("The duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement").

Moreover, even if State Street did believe that the amount of damage failed to meet the deductible and was therefore not covered by the Policy, the record, viewed in a light most favorable to plaintiff, shows that its notice was still late. Indeed, the Amended Application indicated that, by April 10, 2017, the Property's floors had worsened to the point where they were beyond repair. PSMF ¶ 13-15. No reasonable jury could find, at that point, that plaintiff had a reasonable belief that the Property's damage was below the

deductible. Yet, by plaintiff's own admission, it waited an additional ten months to report the claim to Acadia. *Id.* at ¶ 17. Even standing alone, this ten-month gap is unreasonable as a matter of law. *See Minasian*, 676 F. App'x at 31 (collecting cases and noting that "on numerous occasions, New York courts have held notice delays of less than three months unreasonable as a matter of law and discharged insurers of coverage obligations").

In sum, "[n]otice provisions in insurance policies afford the insurer an opportunity to protect itself." *Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (N.Y. 1972). "Without timely notice an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud." *Power Auth.*, 502 N.Y.S.2d at 422. While there may be circumstances that excuse or explain an insured's delay in giving notice to its insurer, the burden is on the insured to show the reasonableness of its excuse. *White ex rel. White v. City of N.Y.*, 81 N.Y.2d 955, 957 (N.Y. 1993). Viewed in a light most favorable to State Street, the record shows that it failed to give Acadia timely notice of the alleged loss, and thus failed to satisfy a condition precedent to coverage. Plaintiff has failed to show its excuses for giving late notice were reasonable, and summary judgment in favor of defendant is appropriate. Because plaintiff's own motion for summary judgment concerns only coverage and damages, it will be denied as moot.

15

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendant Acadia Insurance Company's motion for summary judgment is GRANTED;

2. Plaintiff 13 State Street LLC's motion for summary judgment is DENIED; and

3. Plaintiff 13 State Street LLC's complaint is DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated:  May 9, 2022
  Utica, New York.